IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BEVERLY E. MURPHEY,<br><br>   Plaintiff,<br><br>  v.<br><br>MID-CENTURY INSURANCE COMPANY,<br>et al.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 13-2598-JAR-JPO<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This removal action seeks to enforce a purported settlement agreement between Plaintiff Beverly E. Murphey and Defendant Mid-Century Insurance Company ("Mid-Century"), the automobile liability insurance carrier for Defendant Laura Wiggs. Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 10) on Count I of the Petition and Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) as to Mid-Century's counterclaim for rescission. The motions are fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants Plaintiff's motions.

## I. Summary Judgment Motion

### A. Uncontroverted Facts

The uncontroverted facts relevant to the motion for summary judgment are straightforward.[1] The Court views the evidence in the light most favorable to Defendant, the non-moving party. Defendant Mid-Century issued a policy of automobile liability insurance

---

[1] The Court need not consider the factual assertions surrounding the underlying automobile negligence claim, so the Court finds that Mid-Century's suggestion that Fed. R. Civ. P. 56(d) applies based on the lack of discovery on such facts moot.

that provides liability coverage for Defendant Wiggs.  Kevin Lash, a Special General Adjuster for Mid-Century, was assigned as the adjuster to handle Plaintiff Beverly Murphey's claim against it stemming from a motor vehicle accident involving Ms. Murphey and Ms. Wiggs that occurred on February 4, 2013.

In September 2013, Mr. Lash began exchanging e-mails with Terrence Campbell, counsel for Ms. Murphey.  On September 17, Mr. Campbell sent to Mr. Lash medical and other records in support of her claim and demanded payment of $366,618.24 "so that suit may be avoided."  On October 9, Mr. Lash sent Mr. Campbell an e-mail stating in part: "As I indicated on your voice-mail, against your demand of $366,618.24, we offer $116,000.  We look forward to your response."[2]  The following day, October 10, at 3:59 p.m., Mr. Campbell responded by e-mail:

> I am authorized to reduce Ms. Murphey's demand to $310,000.  It appears to her that your offer does not take into account the likelihood of punitive damages if it is determined (as seems likely) that your insured was texting and driving.  Do you have a recorded statement from your insured that you can produce?
> The $310,000 demand will expire by its terms at 5:00 p.m. central time on October 15, 2013.[3]

At 6:10 p.m. on October 10, Mr. Lash responded by e-mail: "Against $310,000, we provide a counteroffer of $221,000.  We look to your response.  Our insured denies any texting or like distraction.  Where is that allegation coming from?"[4]

On October 11 at 1:13 p.m., Mr. Campbell responded: "Kevin, the offer of $221,000 is

---

[2]Doc. 11, Ex. C.

[3]Doc. 11, Ex. D.

[4]Doc. 11, Ex. E.

hereby accepted.  Thank you for your professionalism on this claim."[5]  At 3:03 p.m. that same day, Mr. Lash wrote to Mr. Campbell by e-mail: "Terry, My apology.  The offer for $221,000 was a typographical error.  The offer is and always was to be $121,000."[6]  Mr. Campbell and Mr. Lash exchanged further e-mails expressing their differing views about whether Mr. Lash's typographical error sufficed to invalidate any agreement that may have been formed.  Mr. Campbell takes the position that a settlement agreement was reached; Mr. Lash maintains that it was not and attempted to reopen the negotiation with a $121,000 counteroffer.

The maximum settlement authority that Mr. Lash received from his manager was $160,000.  When he typed the October 10 e-mail offering $221,000, it was a typographical error that he did not catch at the time he sent the e-mail.  He intended to type $121,000 instead.

On October 23, 2014, Ms. Murphey filed a Petition in Douglas County, Kansas District Court seeking to enforce the parties' settlement agreement.  She alleges state law claims for breach of contract, and for a declaratory judgment that the parties entered into a binding and enforceable settlement agreement, the terms of which call for Mid-Century to pay Ms. Murphey $221,000.  The case was removed on November 21, 2013.  Defendant asserts a counterclaim for rescission.  In its Answer and Counterclaim, it denies that any binding or enforceable contract was made or entered into with plaintiff as alleged in the Petition, but in the event it is determined that a contract was made or entered into, Mid-Century maintains that such contract was retracted and rescinded by defendant promptly upon notice of the typographical error.  No discovery has

---

[5]Doc. 11, Ex. F.

[6]Doc. 11, Ex. G.

been conducted in this matter, either in state of federal court.[7]

## B.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[8]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[9]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[10]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[11]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[12]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[13]  "A movant that will not bear the burden of persuasion at trial need not negate the

---

[7]The discovery deadlines set in the Scheduling Order largely run from the date the Court rules on the instant motions.

[8]Fed. R. Civ. P. 56(a).

[9]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[10]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[11]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[12]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

nonmovant's claim."[14]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[15]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[16]  When the moving party also bears the burden of proof at trial,

> a more stringent summary judgment standard applies. Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with "specific facts showing there [is] a genuine issue for trial" merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact. Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.[17]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[18]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[19]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[20]

---

[14]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[15]*Id.*

[16]*Id.*

[17]*Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citations omitted).

[18]*Adams*, 233 F.3d at 1246.

[19]Fed. R. Civ. P. 56(c)(4).

[20]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[21]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[22]

## C.      Discussion

Plaintiff moves for summary judgment on Count 1 of the Petition for breach of contract. Because Plaintiff bears the burden of proof on this issue, as the movant it has the initial burden of establishing all essential elements of the claim as a matter of law.  In resolving issues of contract formation and construction of a purported settlement agreement, the Court should apply state law.[23]  The parties do not dispute that Kansas law applies here.  The elements for a breach of contract claim under Kansas law are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach.[24]  Settlements are favored by the Tenth Circuit.[25]  In Kansas, "in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party

---

[21]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[22]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[23]*Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004).

[24]*See, e.g.*, *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).  The contract states that it is governed by Kansas law.  Doc. 167, Ex. 3 ¶ 19.

[25]*See Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir.1993), *aff'd*, 511 U.S. 863 (1994).

is permitted to repudiate it."[26]

To be enforceable, a settlement agreement must contain a "meeting of the minds on all essential terms and the parties must intend to be bound."[27] "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."[28] "Moreover, once one party has made a settlement offer and the other has unconditionally accepted it, neither party may call off the agreement."[29] Whether a contract was formed is a question of fact.[30]

The motion for summary judgment presents the issue of whether the parties had a meeting of the minds on an essential term of the settlement agreement—price—and intended to be bound. Plaintiff argues that the objective evidence demonstrates a meeting of the minds, while Mid-Century claims it had no intent to be bound by its October 10, 2013 e-mail because the price term included a $100,000 typographical error, which defeats a finding that it intended to be bound.

---

[26]*Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001).

[27]*U.S. ex rel. Quality Trust, Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *6 (D. Kan. Feb. 13, 2008).

[28]*Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976).

[29]*Connor v. Hammer*, 439 P.2d 116 (Kan. 1968); *O'Neill v. Herrington*, 317 P.3d 139, 145 (Kan. Ct. App. 2014). Mid-Century has filed a surreply arguing that the *O'Neill* decision is distinguishable and suggests that since the mandate in that case has not yet issued, it lacks precedential value. The Court cites to *O'Neill*, a published decision issued by the Kansas Court of Appeals, for contract principles that squarely apply in this matter, principles that Mid-Century cannot dispute such as how to evaluate meeting of the minds, particularly in the context of offer and acceptance e-mails.

[30]*Reznik v. McKee*, 534 P.2d 243, 254 (Kan. 1975).

In determining whether a contract was formed, the test is objective and not subjective.[31] The focus is on the parties' "outward expression of assent," and not necessarily their "actual or real intention."[32] The e-mails between the parties, which represent the uncontroverted facts in this matter, establish the outward expression of the parties' intent as to whether a settlement was reached in this case. Plaintiff and Mid-Century negotiated back and forth between Plaintiff's high point of $366,618.24 and Mid-Century's low point of $116,000. Plaintiff reduced her demand by about $60,000, to which Mid-Century responded with its $221,000 counteroffer. Aside from the fact that the e-mail itself represents objective evidence of Mid-Century's intent, the $221,000 figure represented a logical midpoint within the context of the parties' negotiations, especially compared to $121,000, a mere $5000 difference in Mid-Century's prior counteroffer.

Despite the objective evidence to the contrary, Mid-Century asks the Court to weigh more heavily evidence of its subjective intent. To be sure, the evidence is uncontroverted that Mr. Lash did not intend to write $221,000 in his October 10 e-mail; he meant to write $121,000. But such evidence does not dictate the Court's inquiry about whether the parties had a meeting of the minds on the essential term of price. The law is clear that undisclosed intentions are not to be considered when determining the parties' intent.[33] The objective evidence demonstrated by the parties' e-mails in this case establishes as a matter of law that a contract was formed between the parties.

Mid-Century argues that it would be harsh and unjust to hold it to the terms of this

---

[31]*Southwest & Assocs., Inc. v. Steven Enters.*, LLC, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004).

[32]*Id.* (internal quotations omitted).

[33]*O'Neill*, 317 P.3d at 145 (citing *First Nat'l Bank & Trust Co. v. Lygrisse*, 647 P.2d 1268 (Kan. 1982); *Kansas ex rel. v. Rosenbaum Grain Co.*, 222 P. 80 (Kan. 1924)).

agreement because it was based on a typographical error made with no bad faith in the context of

e-mail negotiations.  The Court is not persuaded that the fact that this mistake arose in the

context of an e-mail exchange is particularly relevant to the inquiry.  Certainly, contract

negotiations by e-mail have become ubiquitous.  "Parties can bind themselves to a contract

orally or by informal letters or e-mails."[34]  The fact that e-mail may create a greater potential for

typographical errors does not change the law that applies in this case.  Indeed, if this were the

case, it would have a chilling effect on parties' reliance on such communication for purposes of

negotiating contracts and settling disputes.

The Kansas Court of Appeals recently decided the case of *O'Neill v. Herrington*,[35] where

it considered whether to enforce a settlement agreement reached between parties by e-mail

despite one party's attempt to repudiate the contract.[36]  There, the Plaintiffs sent an e-mail to one

of two defendants in the lawsuit, the law firm of McDowell, Rice, Smith, & Buchanan, P.C.

("MRSB"), offering to dismiss the claims against MSRB in exchange for a mutual release.  They

expressly preserved their claims against the other defendant.  MSRB accepted that offer by e-

mail and plaintiffs asked MRSB to prepare a written settlement agreement, which it did.  After

receiving the written settlement agreement, plaintiffs asked for one change, which MRSB made

and then it signed and e-mailed the agreement to the plaintiffs.  When the plaintiffs failed to sign

the agreement, MRSB moved to enforce it and dismiss it from the case.  The plaintiffs

---

[34]*Id.* at 146.

[35]317 P.3d 139, 145 (Kan. Ct. App. 2014).  Mid-Century suggests that the *O'Neill* decision may lack
precedential value since a motion for review is pending before the Kansas Supreme Court.  But the case is a
published decision issued by the Kansas Court of Appeals, giving it precedential value, even without the mandate.
*See* Kan. S. Ct. R. 7.04.

[36]*Id.* at 145.

maintained that they did not intend to release all claims against MSRB; they only intended to release certain claims and that they were still considering the agreement.  The Kansas Court of Appeals held that the parties had reached a final agreement that included a mutual release as to all claims because the plaintiffs never conveyed their intent to limit the release or further consider the terms of the agreement.[37]  The court found that the objective evidence in the case—the unambiguous words in the parties' emails—showed that an offer and acceptance had occurred.[38]

Mid-Century correctly points out that *O'Neill* did not involve a typographical error as in the instant case.  However, as the Court explains throughout this Order, neither *O'Neill*, nor any other Kansas authority persuades this Court that Kansas law permits an exception to the well-established law on contract formation under the circumstances of a typographical error of which the offeree has no actual or constructive knowledge.  While the facts in *O'Neill* may not be on all fours with the facts of this case, it does support this Court's determination that the objective evidence in the form of the parties' e-mails govern the Court's determination of whether there was a meeting of the minds.[39]

Mid-Century cites to two cases in support of its argument that a party's typographical error in an offer is evidence that there was no meeting of the minds.  First, Mid-Century discusses *Whitaker v. Associated Credit Services, Inc.*,[40] where the Sixth Circuit Court of

---

[37]*Id.* at 145–46.

[38]*Id.*

[39]*Id.*

[40]946 F.2d 1222 (6th Cir. 1991).

Appeals considered whether equitable circumstances supported setting aside a judgment that was entered under the Rule 68 offer of judgment procedure based on a typographical error.  The Court found that equitable circumstances did support setting aside the judgment under Fed. R. Civ. P. 60(b)(1) because the mistake was a big one—$500,000 instead of $500, in a Fair Credit Reporting Act case.  Critical to the Court's finding was the fact that:

> any reasonable person would have been shocked by the offer in light of the circumstances of this case, viz., the fact that before they filed their action, plaintiffs had made no demands for monetary damages; that while plaintiffs had requested $1 million in punitive damages on the underlying claim in their complaint, Trans Union was only one of six defendants named in the complaint; that plaintiffs in their complaint specified only $3,600 in actual damages caused by Trans Union's conduct; and that the purported $500,000 offer was the first offer of any kind that plaintiffs had received from defendants.

> We further note that plaintiffs suffered no prejudice from the district court's action in setting aside the $500,000 judgment. Plaintiffs were put in the same position they were in before they received the erroneous $500,000 offer of judgment, and they can still litigate the underlying claim on its merits. If the $500,000 judgment were enforced, it would result in not only a windfall but unjust enrichment.[41]

The Court finds *Whitaker* inapposite for several reasons.  First, this is a breach of contract case under Kansas law, while the *Whitaker* action considered setting aside a judgment under Rule 60 under equitable considerations.  Second, the key fact that persuaded that court to set aside the judgment—the plaintiffs' actual or constructive awareness of the mistake—is not present here. In this case, Mid-Century's counteroffer fell at the midpoint of the parties' existing negotiations. Given the context of those negotiations, there is no genuine issue of material fact that Plaintiff

---

[41]*Id.* at 1225.

11

believed the offer to be valid.

The other case Mid-Century relies on is *McMahon v. Maille*,[42] an unpublished decision from a Rhode Island trial court.  Like *Whitaker,* this case involves an offer of judgment made to two plaintiffs.  Early in the case, defense counsel offered to settle with each plaintiff respectively for $30,000 and $80,000.  They declined the offers.  Later in the case, after a failed arbitration, defense counsel sent offers of judgment to the plaintiffs for the same amounts offered earlier in the case; however, counsel's staff inadvertently transposed the two settlement offers so that the plaintiff who had previously been offered $30,000 was offered $80,000, and the plaintiff who had been offered $80,000 was offered $30,000.

Relying on *Whitaker*, the court considered whether equity dictated that the judgment be set aside due to the transposition error under Rhode Island's corollary rule to Fed. R. Civ. P. 60(b)(1), applying the principles of contract law.[43]  The court found no meeting on the minds sufficient to form a contract, finding the facts to be similar to *Whitaker*.[44]  As with *Whitaker*, this case involved an offer that was not intended by the party making it and that did not involve a wrongful assessment of the case, but a mere clerical error.  Additionally, while "the offer sent to Plaintiff was not as outrageous as that sent to the *Whitaker* plaintiffs, Plaintiff and her attorney were still aware that something was amiss.  Plaintiff questioned why the offers to her and Rego had suddenly flipped, and Plaintiff's counsel noted that he was 'concerned' about the inversion

---

[42]No. PC-2008-5888, 2011 WL 6148798 (R.I. Super. Dec. 7, 2011).

[43]*Id.*

[44]*Id.*

12

in settlement offers as well."[45]

Again, the key fact present in both *Whitaker* and *McMahon* that contributed to the courts' findings that there was no meeting of the minds was at least constructive knowledge by the offeree that the offer was a mistake.  In *Whitaker*, that knowledge was due to the outrageous nature of the offer in light of the context of the case.  In *McMahon*, it was based on counsel's awareness that the settlement offers to the two plaintiffs were inverted the second time around. There is no evidence of any awareness in this case on the part of Plaintiff or her counsel that Mid-Century's offer was or could have been a mistake.  It fell at the midpoint of their existing negotiations, and was made after a demand for Plaintiff's recorded statement and an allegation that she was texting while driving at the time of the accident.  A reasonable person would have every reason to believe Mid-Century's offer was valid and therefore, the Court finds that the objective evidence establishes as a matter of law that there was a meeting of the minds. Plaintiff's evidence does not rebut this objective evidence because it only establishes Mr. Lash's subjective intent that was never disclosed until after acceptance occurred.

Plaintiff maintains that the typographical error here constitutes a unilateral mistake and under Kansas law a unilateral mistake "is insufficient to relieve the mistaken party from the terms of the agreement."[46]   Mid-Century points out that "unilateral error may be a good defense to a contract where hardship amounting to injustice would be inflicted by holding a party to the agreement, and where it would be harsh and unreasonable to enforce the agreement."[47]  The

---

[45]*Id.*

[46]*Squires v. Woodbury*, 621 P.2d 443, 446 (Kan. Ct. App. 1980) (collecting cases).

[47]*Id.* (citing *Geiger v. Hansen*, 519 P.2d 699, 702 (Kan. 1974)).

Court agrees that this case involves a unilateral mistake, for the reasons already discussed. While the impact of this mistake is certainly unfortunate for Mid-Century, there is no evidence that it would amount to an injustice for Mid-Century to be bound by an offer that was well within the scope of damages Plaintiff would be seeking on the insurance claim, and that represented a midpoint in the parties' existing negotiations.  Moreover, Plaintiff persuasively argues that she would suffer an injustice by not enforcing the agreement: the parties would have unequal bargaining power in any future negotiations given that Mid-Century now knows the amount for which Plaintiff is willing to settle the case.

Mid-Century argues that it timely repudiated the offer and therefore should be able to avoid enforcement of the contract.  It argues further that Mr. Lash was not authorized to offer an amount in excess of $160,000, therefore Mid-Century's repudiation constituted repudiation of an unauthorized agreement immediately after learning of it.  Citing *Whitaker* and *McMahon*, Mid-Century argues that because Mr. Lash repudiated the offer less than two hours after it was accepted, it sufficed to avoid enforcement of the contract.  As already discussed, these cases deal with typographical errors that should have been known to the offerees when they were made. The timeliness of the repudiation was not the lynchpin of the courts' rulings in either case.  Mid-Century also relies on Kansas caselaw that where a client unequivocally repudiates an unauthorized settlement agreement immediately after learning of it, the agreement must be set aside.[48]  But these cases are inapposite because Mr. Lash is not an attorney.  According to his affidavit, he is a special general adjuster who Mid-Century appointed to adjust Plaintiff's claim

---

[48] *See Hayes v. Eagle-Picher Indus., Inc.*, 513 F.2d 892, 894 (10th Cir. 1975); *Swift-Eckrich, Inc. v. Advantage Sys., Inc.*, 55 F. Supp. 2d 1280, 1284 (D. Kan. 1999).

in this case.  He is an employee of the principal, not an attorney.

It is clear from the summary judgment record that while Mr. Lash did not have actual authority to settle the case for $221,000, he had apparent authority that was sufficient to bind Mid-Century.  "'An ostensible or apparent agent is one whom the principal has intentionally or by want of ordinary care induced and permitted third persons to believe to be his agent even though no authority, either express or implied, has been conferred upon him.'"[49] The apparent authority doctrine applies in exactly these circumstances: "when a third party has dealt with an ostensible agent and then seeks to bind the principle to a transaction despite the fact that the agent had no actual authority to bind him."[50]  There is no genuine issue of material fact that Plaintiff, through her attorney, believed that Mr. Lash had authority to bind Mid-Century to the settlement offers that he made by e-mail.  Mr. Lash was a special general adjuster for the insurance company and held himself out to Mr. Campbell as the person to whom settlement authority had been granted.  Given the reasonableness of Mr. Lash's $221,000 offer as described throughout this order, Plaintiff would have no reason to know or question Mr. Lash's authority to offer this amount in settlement of the claim.  Because Mr. Lash had apparent authority to settle Plaintiff's insurance claim, Mid-Century cannot repudiate on this basis.  As describe at the beginning of the discussion, once there has been a meeting of the minds and a settlement offer accepted, it cannot be repudiated.

In sum, Plaintiff's motion for summary judgment on Count I of her Petition for breach of

---

[49]*Theis v. duPont, Glore Forgan Inc.*, 510 P.2d 1212, 1216 (Kan. 1973) (quoting *Greep v. Bruns*, 159 P.2d 803, 808 (Kan. 1945)).

[50]*Id.*

contract is granted.

## II.      Motion for Judgment on the Pleadings

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is

the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6).[51]  The court must accept all facts pleaded by the non-moving party as true and grant all

reasonable inference from the pleadings in favor of the non-moving party.[52]  A motion for

judgment on the pleadings should not be granted unless the movant has clearly established that

there are no material facts to be resolved and that the movant is entitled to judgment as a matter

of law.[53]  The court does not accept as true legal conclusions that are couched as factual

allegations,[54] but rather determines whether the factual allegations "plausibly give rise to an

entitlement to relief."[55]  To avoid dismissal, a plaintiff must state a plausible claim, which

requires "sufficient factual allegations to 'raise a right to relief above the speculative level.'"[56]

The Court has granted summary judgment to Plaintiff on Count I, and in doing so

rejected Mid-Century's claim that it repudiated the settlement agreement.  Plaintiff also moves

for judgment on the pleadings as to Mid-Century's counterclaim for rescission, which alleges

that if a contract is found to be enforceable, it was formed solely by mistake and was retracted

---

[51]*Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[52]*Id.*

[53]*Id*

[54]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[55]*Id.* at 679.

[56]*Id.*

16

and rescinded by Defendant promptly upon notice of the error.  The counterclaim alleges that rescission would not cause Plaintiff any prejudice because she may resume compromise negotiations with Mid-Century and continue to seek a reasonable settlement on the underlying claim.  For substantially the same reasons explained in the Court's summary judgment ruling, the Court grants Plaintiff's motion for judgment on the pleadings of Mid-Century's rescission claim. As the Court explained, a unilateral mistake does not allow a party to avoid a contract absent a showing of injustice, and the Court does not find that enforcing this settlement agreement amounts to such injustice, nor does Mid-Century allege facts in its counterclaim that would establish such injustice.  Moreover, the Court has also found no allegation that Plaintiff was aware or should have been aware of the mistake prior to acceptance, sufficient to show mutual mistake or that there was no meeting of the minds.  For these reasons, the counterclaim must be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Partial Summary Judgment (Doc. 10) on Count I of the Petition and Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) as to Mid-Century's counterclaim for rescission are **granted**.

Dated: June 12, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE